IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BYRON JONES,

    Petitioner,

v.

DAVID E. ORTIZ,

    Respondent.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 17-2639 (JBS)

**OPINION**

APPEARANCES:

BYRON JONES, Petitioner Pro Se
09702-058
Fort Dix Federal Correctional Institution
Inmate Mail/Parcels
East: P.O. Box 2000
Fort Dix, NJ 08640

CRAIG CARPENITO, United States Attorney
    By: ANNE B. TAYLOR, Assistant United States Attorney
Office of the U.S. Attorney
401 Market Street, 4th Floor
P.O. Box 2098
Camden, New Jersey 08101
    Attorney for Respondent David Ortiz

**SIMANDLE, U.S. District Judge:**

**I.    INTRODUCTION**

    This matter comes before the Court on Byron Jones' ("Petitioner") petition for writ of habeas corpus challenging a disciplinary proceeding. [Petition, Docket Entry 1]. Respondent David Ortiz opposes the petition. [Answer, Docket Entry 4]. The parties have submitted supplemental briefing at the request of

the Court on the issue of the denial of Petitioner's request for a polygraph test in connection with defending disciplinary charges. [Docket Entries 7 & 12]. The petition is being decided on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the petition is granted in part. Preliminarily, the Court determines that the BOP did not violate any due process right by denying a polygraph examination. The Court vacates the stealing charge, while the Court upholds the insolence charge, and accompanying sanction of loss of 14-days of good credit time and remands the matter to the Bureau of Prisons for recalculation of Petitioner's sentence and correction of Petitioner's record.

## II. BACKGROUND

Petitioner is a convicted and sentenced federal prisoner. He now challenges the result of a disciplinary proceeding conducted by the Federal Bureau of Prisons ("BOP") at USP Lewisburg, Pennsylvania,[1] finding him guilty of violating Code 219 (Stealing) and Code 312 (Insolence towards a staff member). *See also* 28 C.F.R. § 541.3 (Table 1). The reporting officer described the incident as follows:

---

[1] Even though this petition arises from discipline imposed at Petitioner's prior place of confinement at USP Lewisburg, Pennsylvania, this Court has jurisdiction over this § 2241 petition as Petitioner was confined at FCI Fort Dix, New Jersey at the time he filed this petition, and he has recently been returned to FCI Fort Dix.

> On [August 5, 2015] at approximately 10:40 AM, inmate Jones, Byron #09702-058 was exiting the LEC food service and was attempting to remove food service items by concealing food service items. These items were 1 banana, 1 peach, and 2 pieces of bread. I then ordered the inmate to place the food items in the trash or eat the items in food service. Inmate Jones then proceeded to exit the dining hall with these items and loudly stated "In fucking policy states 1 piece of fruit is allowed." There is currently a sign placed at the exit of the LEC food service that states No Food Service Items Allowed Out Of Food Service. This Inmate continued to be disruptive and challenge my direct order in front of other inmates during main line until he was placed in the R&D holding cell.

[Incident Report, Docket Entry 1-2 at 2 § 11]. Petitioner was charged with violating Codes 307 (refusing to obey an order) and 305 (possession of anything not authorized) as well as stealing and insolence. [*Id.* §§ 9-10]. The matter was referred to the Unit Discipline Committee ("UDC"). The hearing took place 24 hours later on August 6, 2015. [*Id.* § 21].

Petitioner argued before the UDC that the charges were retaliatory for pointing out a discrepancy between the posted signs and the policy in the inmate handbook. [*Id.* § 17]. He stated that he "left the kitchen with a banana in [his] hand [and] noticed that C.O. Sheets was taking bananas as people were leaving food service by the bulletin board area." [*Id.*]. He asserts that once he gave Officer Sheets the banana, he informed Officer Sheets that he understood the policy to be that inmates were permitted to take one piece of fruit from Food Services. [*Id.*]. Officer Sheets showed Petitioner the sign stating that

all food was to remain in the food service area, and Petitioner asserted that he told Officer Sheets: "I understand what the sign says but policy says something else and I'm going to the computer to print it off." [*Id.*]. According to Petitioner, Officer Sheets came over to him at the computer and began to write up the charges. [*Id.*].

The UDC determined that Petitioner had committed the prohibited acts based on Officer Sheets' account. [*Id.* § 19]. It referred the matter to the Disciplinary Hearing Officer ("DHO") for a further hearing. [*Id.* § 20].

The hearing occurred on August 12, 2015. Petitioner requested three inmate witness to appear on his behalf: Rasheed Harrell, Keon Lovelady, and David Colon. [DHO Report, Docket Entry 1-2, § III.C.2]. He waived his right to a staff representative. [*Id.* § II.A]. At the hearing, Petitioner testified on his own behalf and argued that he was given the food as part of his religious diet accommodation. [*Id.* § III.B]. He stated that "'the only part of the incident report that is true is that I had one banana, one peach, and two pieces of bread.'" [*Id.*]. According to the report, Petitioner testified that he had the banana in his hand and kept the peach in his shirt pocket and the bread in his pants pocket. [*Id.*]. He asserted he handed the banana to the officer when confronted at the Food Services door with the sign that no food was to be

removed from Food Services. [*Id.*]. He stated he told the officer that prison policy permitted inmates to remove one piece of fruit from the hall but denied raising his voice to the officer or using foul language. [*Id.*]. Petitioner testified "he removed the bread from Food Services to 'feed the animals' . . ., and 'the peach wasn't ripe yet, I was going to eat that later.'" [*Id.*]. He presented signs from around the prison about feeding the wildlife in support of his argument that it was common knowledge that inmates fed the animals. [*Id.*]. *See also* [Petitioner's Exhibit F, Docket Entry 1-2 at 14-15 ("Please do not put cat food on the sidewalk . . . . Instead place any food in the grass away from the building!); ("Do not feed the animals (or at least not right here! – place it on the grass)")].

Petitioner's witnesses testified as to Petitioner's encounter with Officer Sheets. [*Id.* § III.C.2]. Harrell denied hearing Petitioner argue with Officer Sheets and described Petitioner's tone as "'completely respectful.'" On the other hand, Lovelady testified that Petitioner and Officer Sheets were speaking to each other in raised voices. "'It was a *confrontation*.'" [*Id.* (emphasis in original)]. He denied hearing Petitioner use any profanity. Colon described Petitioner's tone as "'*heated*'" but also denied hearing Petitioner use any profanity. [*Id.* (emphasis in original)].

5

The DHO found that the greater weight of the evidence supported a finding that Petitioner had committed the prohibited acts of attempted stealing and insolence towards a staff member. [*Id.* § V]. He credited the testimony of inmates Lovelady and Colon who testified that Petitioner raised his voice to and argued with Officer Sheets. [*Id.*]. As to stealing, the DHO stated:

> First, despite Jones' argument that there is a discrepancy between information in the inmate handbook and the sign in the inmate dining hall regarding whether an inmate is permitted to remove one piece of fresh fruit from the dining hall during a given meal, the fact is Jones admittedly had two pieces of fresh fruit, a banana and a peach, as well as two pieces of bread, in his possession at the time he was exiting the dining hall. Accordingly, even if Jones were permitted to remove one piece of fresh fruit from the dining hall, he still exceeded that amount. Jones further admitted he did not have the permission of any staff member to remove any of these food items from the dining hall. All of the food in the dining area is government property. Jones admittedly took and appropriated this property without permission or right, as he did not have the permission of any staff member to remove the items from the dining hall. The offense elements for Attempted Stealing, therefore, are clearly met in this case.

[*Id.*]. The DHO sanctioned Petitioner with the loss of 14 days of good conduct time, loss of commissary privileges, loss of emailing privileges, loss of visiting privileges, and disciplinary segregation for 30 days for stealing. [*Id.* § VI.].[2]

---

[2] The disciplinary segregation sanction was suspended 180 days. [*Id.*].

Petitioner was sanctioned with the loss of telephone privileges on the insolence charge. [*Id.*].

Petitioner filed an appeal of the disciplinary charges on September 15, 2015. [Docket Entry 4-2 at 6]. Petitioner argued Officer Sheets issued the charges in retaliation for "Mr. Jones's attempt to utilize the grievance procedures." [*Id.* at 7]. He requested that he be permitted to take a polygraph examination to prove that the charges were false and brought in retaliation for his attempt to grieve Officer Sheets' conduct. [*Id.*]. He argued that he was "issued the items he had in his possession by food service staff as part of his noon meal" and therefore did not "steal" any food. [*Id.*]. Regional Director J.L. Norwood denied the appeal on November 24, 2015. [Docket Entry 4-2 at 8]. Petitioner appealed to the BOP's Central Office, [Docket Entry 4-2 at 11], and his appeal was denied on January 26, 2017, [Docket Entry 4-2 at 13].

Petitioner filed his petition under 28 U.S.C. § 2241 on April 18, 2017. [Docket Entry 1]. The Court ordered Respondent to answer the petition on April 28, 2017. [Docket Entry 3]. Respondent filed its answer on June 5, 2017, [Docket Entry 4], and Petitioner filed a traverse, [Docket Entry 5]. On September 12, 2017, the Court ordered Respondent to submit an affidavit or any other documentary evidence setting forth the rationale for denying Petitioner a polygraph examination in connection with

his disciplinary hearing. [Docket Entry 6]. Respondent submitted the Declaration of DHO Brian Chambers on October 10, 2017. [Chambers Dec., Docket Entry 7]. Petitioner submitted his response on December 14, 2017. [Docket Entry 12].

The matter is now fully briefed and ready for disposition. Fed. R. Civ. P. 78(b).

**III. ANALYSIS**

Petitioner raises two arguments before the Court: (1) that he was denied his due process right to present evidence when the DHO refused to permit him to take a polygraph examination; and (2) there is no evidence to support the charges.

Good conduct credit may only be taken from an inmate if due process protections are observed. "Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. When such a statutorily created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." *Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) (internal citations and quotation marks omitted). "Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake." *McGee v. Schism*, 463 F. App'x 61, 63 (3d Cir. 2013) (per curiam). In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the

8

Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Moreover, the "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558).

**A. Denial of Polygraph Examination**

Under *Wolff*, inmates must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (citing *Wolff*, 418 U.S. at 563-67). Petitioner alleges the BOP violated *Wolff* by refusing to permit him to take a polygraph examination. A review of the record indicates the BOP did not violate Petitioner's due process rights by failing to provide him with a polygraph examination.

An inmate facing the loss of good-time credits has a due process right to "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. "Although prison officials are afforded deference regarding

9

whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion afforded prison officials is not without limits.'" *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011) (quoting *Young v. Kann*, 926 F.2d 1396, 1400 (3d Cir. 1991)). Prison officials must "determine whether there are legitimate penological reasons to deny the prisoner access to the evidence requested." *Id.* at 174.

The parties dispute whether Petitioner requested a polygraph examination before his hearing. DHO Chambers asserts Petitioner did not request a polygraph examination because it is not reflected in his report that Petitioner requested one. [Chambers Dec., Docket Entry 7 ¶ 3]. He states he has "a routine practice when an inmate makes a request for a polygraph examination. When an inmate makes such a request, I note on the DHO report and inform the inmate at the hearing that he has no due process right to a polygraph examination. I also advise the inmate that there is no right for such an examination to be considered as evidence at the disciplinary hearing." [*Id.* ¶ 4]. DHO Chambers further argues the BOP policy governing polygraphs, Program Statement 5110.13, "is inapplicable to DHO hearings as it is the policy outlining polygraph testing requests of law enforcement officials or other authorized individuals. The policy does not specifically state or imply that an inmate can

make such a request for discipline hearing purposes." [*Id.* ¶ 5 (internal citation omitted)]. He states that he would have denied Petitioner's request for a polygraph "[e]ven if he had requested one [because] there is no right to a polygraph examination. These are, pursuant to Program Statement 5110.13, administered by a limited number of personnel in response to requests by law enforcement officers who are investigating criminal activity." [*Id.* ¶ 6].

Petitioner argues that he made his request for a polygraph "not only to the LT, but to the UDC and the Warden, and specifically and unequivocally to Mr. Chambers. Petitioner's request fell on dear ears [sic] at each step in the process." [Docket Entry 12 ¶ 6]. He disputes DHO Chambers' interpretation of Program Statement 5110.13. [*Id.* ¶ 5].

Assuming arguendo that Petitioner did request a polygraph examination prior to his hearing, his due process rights were not violated when the BOP failed to provide him with one. "The procedural safeguards of *Wolff* do not guarantee a prisoner the right to present any evidence he wishes." *Abbott v. Hollingsworth*, No. 14-6784, 2015 WL 1952355, at *4 (D.N.J. Apr. 29, 2015) (citing *Manfredi v. United States*, No. 12-1905, 2012 WL 5880343 at *6 (D.N.J. Nov. 20, 2012)); *see also Jemison v. Knight*, 244 F. App'x 39, 42 (7th Cir. 2007) (prisoners "not entitled to a lie-detector test at a prison disciplinary hearing

11

as a matter of law"); *Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (holding that prisoners are not entitled to polygraph tests in disciplinary hearings); *Flanagan v. Warden, U.S. Penitentiary*, 784 F. Supp. 178, 181 (M.D. Pa. 1992) (Prisoner "had no constitutional right to the grant of his request for 'scientific' testing to establish non-ownership of the weapon"), *aff'd sub nom. Flanagan v. Warden USP-Lewisburg*, 6 F.3d 779 (3d Cir. 1993)(table). Although DHO Chambers asserts that Petitioner never requested a polygraph examination, he certified that he would have denied such a request because polygraphs are not constitutionally required, and he interpreted Program Statement 5110.13 to only apply to criminal inquires. DHO Chambers' conclusion that BOP policy did not permit polygraph examinations in inmate disciplinary proceedings is a legitimate reason to deny Petitioner a polygraph examination. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP's interpretation of Program Statements entitled to deference).

Moreover, any error in failing to conduct a polygraph examination was harmless. Through the polygraph, Petitioner sought to prove that he was not insolent towards Officer Sheets and that Officer Sheets had mispresented his interaction with Petitioner. [Docket Entry 1-3 at 14-15]. The encounter was witnessed by several inmates who testified at Petitioner's hearing. Disputes of fact among witnesses, as here, are best

12

sorted out by testimony under oath or affirmation accompanied by cross-examination of persons with knowledge; whether Petitioner was insolent as charged does not depend on scientific issues on which polygraph testing and expert opinion testimony would benefit the finder of fact. The BOP was within its discretion to deny the polygraph exam when so many witnesses having personal knowledge of the events in question were available.

Petitioner is not entitled to habeas relief on this ground.

**B. "Some Evidence"**

In addition to the protections enumerated in *Wolff*, disciplinary actions that deprive prisoners of good time credit must be supported by "some evidence." The Court's review of a prison disciplinary proceeding is minimal and is limited to "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455). *See also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be

13

applied by the district court rather than a burden of proof in a prison disciplinary proceeding."). The Court easily finds that there is at least "some evidence" to support the insolence charge based on the testimony of Officer Sheets and inmates Lovelady and Colon who testified that Petitioner raised his voice to Officer Sheets and argued with Officer Sheets. [DHO Report, Docket Entry 1-2 § V]. Therefore, the Court will uphold the insolence charge.

The Court finds there is no evidence to support the conclusion reached by the DHO on the charge of "stealing." In the absence of any evidentiary support, the BOP's sanction of 14-days loss of good conduct time was arbitrary and capricious in violation of the Due Process Clause.

There are some facts regarding the alleged theft that are not in dispute. Petitioner had a peach, a banana, and two pieces of bread. He attempted to leave the dining hall, at which time Officer Sheets informed him that no "food service items" could be taken out of the hall. Officer Sheets then gave Petitioner the choice to either eat the food or dispose of it. Petitioner indicated in some manner that he believed that he was entitled to take one piece of fruit from the dining hall. Shortly thereafter, Officer Sheets issued the charges against Petitioner.

All the evidence in the record before the Court indicates the food was given to Petitioner as part of his meal. There is no evidence suggesting that Petitioner surreptitiously took food that had not been distributed to him from the kitchen or retrieved discarded items from the trash. The DHO's position at the hearing was that all food belongs to the United States and it is stealing to take it out of the dining hall without express permission. Prohibited act 219 in its entirety forbids "Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored)." 28 C.F.R. § 541.3 (Table 1). The regulation does not further define stealing, but Black's Law Dictionary indicates that to steal is "[t]o take (personal property) illegally with the intent to keep it unlawfully" or is "[t]o take (something) by larceny, embezzlement, or false pretenses." STEAL, Black's Law Dictionary (10th ed. 2014). *See Lerman v. Fed. Bureau of Prisons*, No. 1:01-CV-232-C, 2003 WL 22121092, at *4 (N.D. Tex. Sept. 12, 2003) (relying on dictionary definition of "insolence" in absence of specific definition in BOP regulation). Because the BOP's interpretation of the regulation is inconsistent with the ordinary definition of "stealing," the Court will not defer to it. *See Chong v. Dist. Dir., Immigration & Naturalization Serv.*,

264 F.3d 378, 389 (3d Cir. 2001) ("An agency's interpretation of its own regulation is controlling ... unless it is plainly erroneous or inconsistent with the regulation.").

The fact that one of the choices offered to Petitioner by Officer Sheets when Petitioner attempted to leave Food Services was to eat the food items further indicates that Petitioner had permission to possess the food items. Further, food items (bananas) confiscated from inmates leaving the dining hall were placed in the trash, not returned to the general food supply. The arbitrariness of the BOP's position is clear when one considers the fact that had Petitioner eaten the food and then left the dining hall with the food in his stomach rather than his hands or pockets, the BOP would not be arguing Petitioner stole the food. Petitioner may have disobeyed an order to discard or eat the food,[3] but he did not "steal" the food as that word is traditionally understood. Again, there is no evidence in the record before the Court that indicates the food Petitioner attempted to remove from the dining hall had been discarded, taken from another inmate, or was leftover food not intended for consumption; all of it was purposely given to Petitioner by the BOP for his personal use.

---

[3] The Court makes no findings as to whether Petitioner did in fact disobey an order.

In addition to stealing, Petitioner's original charges included an alleged violation of Code 305, which prohibits "[p]ossession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 C.F.R. § 541.3 [Incident Report § 9]. This charge is a "Moderate Severity Level Prohibited Act" instead of a "High Severity Level" like the charge of which Petitioner was ultimately found guilty. The Court expresses no opinion on whether the evidence could support a violation of Code 305 and notes this charge only to express that a charge of stealing in this instance is an overreach by the BOP. Whatever Petitioner's actions may be, they are not "stealing" within the meaning of Code 219.[4]

As there is no evidence in the record to support a charge of stealing, the Court vacates the stealing charge and the accompanying sanction of loss of 14 days of good conduct time. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("[A] court has broad discretion in conditioning a judgment granting habeas relief."). The BOP must recalculate Petitioner's disciplinary sentence and correct his disciplinary record accordingly.

---

[4] The Court does not suggest that the BOP is powerless to prohibit prisoners from removing food items from the dining hall under an appropriate section of the Code pertaining to health, hygiene, possession of forbidden items, or the like, but not under the circumstances of this case, "stealing."

17

**IV. CONCLUSION**

For the above stated reasons, the petition is granted in part. The Court holds that the Bureau of Prisons did not abuse its discretion in denying Petitioner's request for a lie detector examination in connection with his disciplinary hearing. The imposition of discipline on the charge of insolence is affirmed, imposition of discipline on the charge of stealing is vacated. The matter will be remanded to the BOP to recalculate Petitioner's sentence. An accompanying Order will be entered.

**1/31/2019**                                         **s/ Jerome B. Simandle**
Date                                                   JEROME B. SIMANDLE
                                                                U.S. District Judge